Opinion delivered June 24, 1887.

---

## No. 5517½.

## SAM ROSS v. THE STATE.

MANSLAUGHTER—EVIDENCE—CHARGE OF THE COURT.—See the statement of the case for evidence on a trial for murder *held* to present the issue of manslaughter, and, therefore, to have called for a charge upon that grade of homicide.

APPEAL from the District Court of Ellis.     Tried below before the Hon. Anson Rainey.

This conviction was in the second degree for the murder of Wes. Davis, and the penalty assessed was a term of eight years in the penitentiary.

Doctor Thompson testified, for the State, that one night in May, 1886, he was called to see the deceased in his capacity of a surgeon. He found the deceased suffering from a contused wound above the eye, which fractured the skull. Deceased, when the witness arrived, was lying on the ground, and the defendant was standing under a tree, not far distant. In answer to the question of the witness as to how the wound was inflicted, the defendant replied: "I did it; and if I haven't killed the son of a b—h, I will kill him." This was on Saturday night. The deceased died on the following Tuesday from the effects of said wound.

44 — TEX. APP. XXIII.

Josie Ross was the next witness for the State. She was the wife of the defendant, but no objection was interposed by him to her testifying. She stated that on the evening before the homicide she started from town to the house of Mariah Ricks, traveling on a dray with Wes. Davis. On the way they encountered the defendant, who undertook to pull the witness off the dray. She called upon Wes. Davis to protect her. Responding to witness's appeal, Davis conducted her to his cabin. Defendant followed to the cabin and ordered witness to go home. Deceased was then lying on the floor, drunk. Defendant went off and returned about one o'clock that night, with a brick bat in his hand. He proceeded to make a great deal of noise, when Mr. Ballard, living near, made him leave. Defendant left Ballard's place, taking a route across a pasture, and witness, defendant and a little girl left it by another route across the pasture. Defendant and deceased came together when they reached the road beyond the pasture. Witness went on, but heard defendant say to deceased: "Wes., I don't want to have any trouble with you, or hurt you; my wife is all I want." Deceased replied: "I don't want to hurt you, or have any trouble with you." Witness then looked around, saw defendant throw the brick bat at deceased, saw it strike deceased, and saw deceased fall.

Witness was not living with defendant, her husband, at the time of this difficulty. She was heavy with child, but defendant was not the father. She had not cohabited with defendant since May, 1886. She had never secured a divorce from him. Witness denied that she ever told defendant's attorney, or anybody else, that when defendant threw a brick at deceased, deceased was rushing on him with a bar of iron, threatening to strike him. The witness and deceased never slept together, nor was the deceased ever in her bed. Deceased had nothing in his hand when defendant struck him with the brick. The witness concluded her testimony by declaring positively that she had never had sexual intercouse with deceased, and that she was not in bed with him when defendant came to the cabin on that night.

D. B. Ballard testified, for the State, that defendant came to his house on the night of the day alleged in the indictment, and told him that deceased had taken his wife from him, and that the officers would not arrest deceased on witness's premises. Witness told him to leave and create no disturbance, but to tell the officers that if they had legal process to serve they were at

liberty to serve it on his premises. Witness went back to bed, but soon heard a disturbance in the cabin occupied by deceased. He found defendant, deceased, and the witness Josie Ross in that cabin quarreling. He ordered them to leave. Defendant left the cabin, going across the pasture over one route, and deceased and Josie left, going over another route across the pasture. The cabin door was closed when defendant reached it. On the next morning witness found deceased at the house of Mariah Ricks, badly wounded on the head. He was taken to his cabin, where he afterwards died.

The State closed.

Mr. McKnight and Mr. Cox, counsel for the defense, testified in his behalf, that in September, 1886, in conversation with Josie Ross about this case, she told them that when defendant threw the brick at deceased, deceased was running on him and threatening him with a bar of iron.

George Baker testified that, during the year 1886, he met the deceased at Josie Ross's house, late at night. While the witness was there deceased undressed and went to bed. Josie did not retire while witness was there. A week or two later deceased told witness that Josie was too good for defendant, and that he intended to have her or kill the defendant. Witness reported that threat to defendant. Dave Border corroborated the testimony of the witness Baker.

Ota Cantrell testified, for the defense, that on the night of but before the killing, defendant applied to him to arrest deceased for taking his wife. Witness refused to do so. An hour or two later defendant returned, made a complaint against deceased for assault, and again asked witness to arrest him. Witness declined on the ground that he did not want to disturb Mr. Ballard's family, and promised to arrest the deceased on the next morning. Defendant returned later in the night and reported that his wife and deceased were in bed together, and asked witness to go with him to see them. Witness declined to go. Defendant left, saying that deceased could take the consequences of his wrong doing. Defendant was ordinarily a harmless, peaceable negro.

Ex-Sheriff Fleming testified, for the defense, that defendant applied to him about eleven o'clock on the night of the homicide, to arrest deceased for sleeping with his wife. Witness refused. About three o'clock defendant returned, said that he had killed deceased, and surrendered.

F. M. Maxwell testified, for the defense, that the defendant came to his office on the night of the homicide, hunting for an offier to arrest deceased for being in bed with his wife. Witness told him that he did not need an officer; but to knock deceased in the head.

Josie Ross, recalled by the State in rebuttal, testified that deceased did not have a bar of iron, nor did he advance on defendant when the fatal blow was struck.

Doctor Thompson testified that he reached the scene of the tragedy shortly after it happened. He saw no bar of iron at that place, nor had he ever heard of a bar of iron in connection with this case until now.

*McKnight, Anderson & Cox*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

Hurt, Judge. The appellant, Sam Ross, stands convicted of murder of the second degree for killing with a rock one Wes. Davis.

We are of opinion that, under the facts of case, the court should have submitted the question of manslaughter to the jury. (The Reporters will state the evidence in full.)

The failure in this respect was such error as requires a reversal of the judgment. We have not the time, at this late day of the term, to enter into a lengthy discussion of the evidence from which we think it can clearly be shown that manslaughter is a question presented.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*